1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   ELIZABETH BALES, an                No.  2:18-cv-01714-JAM-DB
     individual,
12
                   Plaintiff,
13                                       **ORDER GRANTING DEFENDANT'S**
           v.                            **MOTION FOR SUMMARY JUDGMENT**
14
     COUNTY OF EL DORADO; TERI
15   MONTEROSSO; and DOES 1-50,
     inclusive,
16
                   Defendants.
17

18        On June 13, 2018, Elizabeth Bales ("Plaintiff") filed suit

19   against El Dorado County ("Defendant") and Teri Monterosso.

20   Compl., ECF No. 1.  Monterosso was dismissed as a defendant on

21   September 20, 2018.  Order, ECF No. 22.  Plaintiff alleges

22   Defendant retaliated against her in violation of Title VII, 42

23   U.S.C. § 2000e *et seq.*, the California Fair Employment and

24   Housing Act ("FEHA"), Cal. Gov't Code § 12940(h) *et seq.*, and

25   the California Whistleblower Protection Act, Cal. Lab. Code

26   § 1102.5.  See generally Compl.  Plaintiff also alleges

27   Defendant violated FEHA in failing to prevent discrimination and

28   retaliation against her.  Id.  Defendant now moves for summary

                                     1

1    judgment on all four of Plaintiff's claims.   Mot. Summ. J.

2    ("Mot."), ECF No. 51.   Plaintiff filed an opposition, Opp'n, ECF

3    Nos. 55, 56, to which Defendant replied, Reply, ECF No. 60.

4         For the reasons set forth below, the Court GRANTS

5    Defendant's Motion for Summary Judgment.[1]

6

7                        I.    BACKGROUND

8         Plaintiff was employed by El Dorado County as a Deputy

9    Public Defender II from November 12, 2016, until June 21, 2017.

10   Plaintiff's Response to Defendant's Undisputed Facts ("SUF"),

11   ECF No. 55, Issue No. 1, ¶ 1.   Plaintiff's first year of

12   employment with Defendant was considered a probationary period.

13   Id. ¶ 2.   During this probationary period, Plaintiff was an at-

14   will employee.   Id. ¶ 4.   This meant that Defendant could

15   dismiss Plaintiff for any reason, so long as the reason was not

16   illegal.   Id.   Teri Monterosso was the Chief Public Defender,

17   hiring authority, and final decision maker in the office.   Id.

18   ¶ 5.   Tim Pappas was the Assistant Public Defendant and general

19   supervisor of the office.   Id.

20        What occurred during Plaintiff's employment with Defendant

21   is largely disputed.   Defendant claims that Monterosso began to

22   have concerns about Plaintiff's job performance in late January

23   2017.   SUF, Issue No. 1, ¶ 6.   And that Monterosso and Pappas

24   observed several additional issues with Plaintiff's job

25   performance and judgment over the next four months.   Id. ¶¶ 7,

26

27   [1] This motion was determined to be suitable for decision without
     oral argument.   E.D. Cal. L.R. 230(g).   The hearing was
28   scheduled for September 15, 2020.

                                2

1    8; see Mot. at 2-4.  Plaintiff disputes the extent to which

2    Monterosso observed incidents wherein she exhibited poor

3    judgment.  Id. ¶ 7.  Plaintiff further argues that several of

4    the alleged incidents are untrue.  Id.  Moreover, Plaintiff

5    claims Monterosso and Pappas never expressed concerns about her

6    job performance.  Id. ¶¶ 7, 8, 10.

7         During roughly this same time period, an internal County

8    investigation commenced involving two of Plaintiff's coworkers—

9    Todd Jones and Susan Gellman.  SUF, Issue No. 1, ¶ 16.  On March

10   8, 2017, Plaintiff was interviewed by an outside investigator as

11   part of the County Human Resource Department's internal

12   workplace investigation concerning Jones.  Id. ¶ 22.  On May 17,

13   2017, Plaintiff was interviewed by the same outside investigator

14   as part of the Gellman investigation.  Id. ¶ 37.  Defendant

15   alleges neither Monterosso nor Pappas knew that Plaintiff had

16   participated in either the Jones or Gellman investigation prior

17   to terminating her employment with the County.  Id. ¶¶ 12, 31,

18   39; SUF, Issue No. 2, ¶¶ 12, 25, 31, 39.  Plaintiff disputes

19   this.  Id.  During each of these interviews, the investigator

20   told Plaintiff to keep the interview process confidential.  SUF,

21   Issue No. 1, ¶ 30; SUF, Issue No. 2, ¶ 30; SUF, Issue No. 3,

22   ¶ 24, 30.

23        Ultimately, Plaintiff was terminated from her job as Deputy

24   Public Defender II on June 21, 2017, while still in her

25   probationary period.  SUF, Issue No. 1, ¶¶ 10, 12.  Defendant

26   alleges that Monterosso made the decision to release Plaintiff

27   from probation after observing Plaintiff's performance in a

28   preliminary hearing.  Id. ¶ 40.  Monterosso believed Plaintiff

3

1  would not be able to meet the office's standards for deputy

2  public defenders.  Id.  Plaintiff, on the other hand, believes

3  she was released in retaliation for having participated in the

4  internal investigations concerning Jones and Gellman.  Id.

5  During her employment with the County, Plaintiff never made a

6  complaint of discrimination, harassment, or retaliation under

7  the County's equal employment opportunity policy.  SUF, Issue

8  No. 2, ¶ 13.  Nor did she file a complaint with the California

9  Department of Fair Employment and Housing ("DFEH") or the United

10  States Equal Employment Opportunity Commission ("EEOC").  Id.

11  Plaintiff received her right to sue notice from DFEH on March

12  28, 2018, and filed her complaint on June 13, 2018.  Compl. ¶ 4.

13

14                         II.  OPINION

15      A.   Evidentiary Objections

16      Plaintiff raised several evidentiary objections in her

17  responses to Defendant's statement of undisputed facts.  See

18  generally SUF; see also Pl.'s Obj. to Def.'s Evid., ECF No. 56-

19  1.  Defendant responded to these objections and filed its own

20  set of objections to Plaintiff's evidence.  See Def.'s Response

21  to Pl.'s Obj., ECF No. 60-2; Def.'s Obj. to Pl.'s Evid., ECF No.

22  60-1.  The Court has reviewed these evidentiary objections but

23  declines to rule on them as courts self-police evidentiary

24  issues on motions for summary judgment and a formal ruling is

25  unnecessary to the determination of this motion.  See Burch v.

26  Regents of the University of California, 433 F.Supp.2d 1110,

27  1118-1122 (E.D. Cal. 2006) (objections challenging the

28  characterization of the evidence are improper on a motion for

                              4

1  summary judgment).

2      B.    Summary Judgment

3      A Court must grant a party's motion for summary judgment

4  "if the movant shows that there is no genuine dispute as to any

5  material fact and the movant is entitled to a judgment as a

6  matter of law."  Fed. R. Civ. Proc. 56(a).   The movant bears the

7  initial burden of "informing the district court of the basis for

8  its motion and identifying [the documents] which it believes

9  demonstrate the absence of a genuine issue of a material fact."

10  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   A fact is

11  material if it "might affect the outcome of the suit under the

12  governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

13  248 (1986).   Once the movant makes this initial showing, the

14  burden rests upon the nonmoving party to "set forth specific

15  facts showing that there is a genuine issue for trial."  Id.   An

16  issue of fact is genuine if "the evidence is such that a

17  reasonable jury could return a verdict for the nonmoving party."

18  Id.

19      C.    Title VII Retaliation

20           1.    Legal Standard

21      Title VII of the Civil Rights Act of 1964, 42 U.S.C.

22  § 2000e *et seq.*, forbids retaliation by employers against

23  employees who have "opposed any practice made an unlawful

24  employment practice" under Title VII.   Retaliation claims under

25  Title VII are evaluated under the McDonnell Douglas Corp. v.

26  Green, 411 U.S. 782 (1973) burden shifting framework.   Yartzoff

27  v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987).   Under this

28  framework, a plaintiff must first establish a *prima facie* case

1   of retaliation.  Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796-97

2   (9th Cir. 1982).  To establish retaliation, a plaintiff must

3   demonstrate: (1) a protected activity; (2) an adverse employment

4   action; and (3) a causal link between the protected activity and

5   the adverse employment action.  Villiarimo v. Aloha Island Air,

6   Inc., 281 F.3d 1054, 1064 (9th Cir. 2002).

7        Title VII's anti-retaliation provision makes it unlawful

8   for an employer to discriminate against an employee because she

9   has either: (1) opposed any unlawful employment practice; or

10  (2) made a charge, testified, assisted, or participated in any

11  manner in an investigation, proceeding or hearing related to an

12  unlawful employment practice.  See 42 U.S.C. § 2000e-3(a).  The

13  former is known as the "opposition clause" and the latter as the

14  "participation clause."  Crawford v. Metropolitan Gov't of

15  Nashville and Davidson Cnty., Tenn., 555 U.S. 271, 274 (2009).

16  Unlawful employment practices, as that term is defined by Title

17  VII, generally extends only to adverse employment decisions made

18  on the basis of race, color, religion, sex, or national origin.

19  42 U.S.C. § 2000e-2.  The employee need only reasonably believe

20  that the employer has engaged in an unlawful employment

21  practice.  Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1411

22  (9th Cir. 1987) (citation omitted).

23       If the plaintiff succeeds in demonstrating a *prima facie*

24  case of retaliation, the burden then shifts to the defendant to

25  articulate a legitimate, non-retaliatory reason for its

26  employment decision.  Cohen, 686 F.2d at 796-97.  "If the

27  defendant meets this requirement, the burden then shifts back to

28  the plaintiff to raise a triable issue of fact that the

                                  6

1   defendant's proffered reason was a pretext for retaliation."

2   Id.   Thus, the ultimate burden of persuasion rests with the

3   plaintiff.   Id.

4                2.   Analysis

5        As an initial matter, Plaintiff did not file any complaints

6   under the County's equal employment opportunity policy.   SUF,

7   Issue No. 2, ¶ 13.   Nor did she file a complaint with the EEOC

8   or DFEH.   Id.   Moreover, Plaintiff did not participate in any

9   investigatory proceeding before the EEOC or DFEH during the time

10  she was employed with the County.   Id. ¶ 14.   Plaintiff does not

11  dispute any of this and, notably, does not argue that the

12  participation clause applies.   Therefore, Plaintiff has conceded

13  the inapplicability of the participation clause by silence.   See

14  Ardente, Inc. v. Shanley, Case No. 07-CV-4479-MHP, 2010 WL

15  546485 at *6 (N.D. Cal. 2010) ("Plaintiff fails to respond to

16  this argument and therefore concedes it through silence."); see

17  also E.D. Cal. L.R. 230(c).   Thus, the Court's analysis is

18  limited to whether Plaintiff opposed an unlawful employment

19  practice.

20       Plaintiff alleges that she opposed unlawful employment

21  practices by supporting Jones and Gellman's allegations of

22  harassment and discrimination when she was interviewed by the

23  outside investigator.   See Opp'n at 21–22.   Plaintiff alleges

24  that she told the outside investigator what she had heard from

25  her colleagues and witnessed herself.   SUF, Issue No. 1, ¶¶ 13,

26  17–18, 20–23.   Defendant argues that neither the Jones nor

27  Gellman investigations involved any allegations of

28  discrimination or harassment based on a protected trait or

                                    7

1  retaliation for a protected activity.  Id. ¶ 17.  Instead, the

2  investigations had to do with County Personnel Rule 111, which

3  prohibits disrespectful treatment of fellow employees.  Id.

4  ¶ 27.  And that Plaintiff had no information to suggest the

5  interviews involved allegations of discrimination, harassment,

6  or retaliation.  Id. ¶ 36.  Plaintiff relies on various emails,

7  meetings, and deposition statements to dispute Defendant's

8  position on the nature of the internal investigations.  See id.

9  ¶¶ 12, 17, 27, 36, 39.  Much of the evidence that Plaintiff

10  presents in opposition requires the Court to engage in a game of

11  "he said, she said."  The Court declines to do so and instead

12  relies on the facts to determine whether Plaintiff has

13  established a *prima facie* case of Title VII retaliation.

14       During the month of February 2017, Jones sent a series

15  office-wide emails that took issue with the way the office was

16  being run.  See Exs. A, B, C, D, F to Jones Decl., ECF Nos. 55-

17  21, 55-22, 55-23, 55-24, 55-26.  Jones' various complaints are

18  well-documented throughout the emails.  However, absent from

19  them is any allegation that Defendant was engaging in unlawful

20  employment practices, as that term is defined by Title VII.  At

21  most, Jones perceived Pappas' presence in one of the court rooms

22  while Jones was working as an "illegal attempt to intimidate

23  [him]."  See Ex. D to Jones Decl.  As a result of this slew of

24  emails, Defendant commenced an internal workplace investigation.

25  On March 6, 2017, Plaintiff received a letter about the

26  investigation.  See Ex. E to Bales Dep., ECF No. 51-3.  The

27  letter made clear that its purpose was to "investigate

28  allegations of a potential violation of the Personnel Rule 111:

1    Respectful Workplace."   Id.   Plaintiff was interviewed as part

2    of the Jones investigation on March 8, 2017.   SUF, Issue No. 1,

3    ¶ 22.   She understood the interview to be about Jones' office-

4    wide emails.   Bales Dep. 124:14-18; 125:10-11, ECF No. 51-3.

5    Plaintiff was not under the impression that the investigation

6    had to do with allegations of gender discrimination.   Id.

7    127:10, 15-17, 21; 128:2, 7-11, 17, 20; 185:24; 247:13-24.   It

8    was not until after Plaintiff's interview that Monterosso and

9    Pappas were informed that Jones filed a DFEH/EEOC complaint.

10   Watts Decl. ¶ 5, ECF NO. 55-12.

11        On March 12, 2017, Plaintiff received a letter about the

12   Gellman workplace investigation.   See Ex. F. to Bales, Dep., ECF

13   No. 51-3.   Plaintiff was interviewed as part of the Gellman

14   investigation on May 17, 2017.   SUF, Issue No. 1, ¶ 37.

15   Plaintiff understood the investigation to be about workplace

16   relations between Gellman and Monterosso.   Bales Dep. 153:2-4;

17   158:19-22.   And that Gellman felt retaliated against by

18   Monterosso for the situation involving Jones.   Id. 153: 9-14.

19   However, Plaintiff presents no evidence to support the

20   contention that Gellman had complained of retaliation for

21   opposing a Title VII unlawful employment practice, and that she

22   knew of any such complaint, at the time she was interviewed.

23   Plaintiff was merely asked questions about retaliation against

24   Gellman "generally" and "what the motive for that would have

25   been."   Id. 157:19-23.   Plaintiff did not tell the investigator

26   that Gellman felt she was retaliated against for supporting

27   Jones' claims of gender discrimination.   Plaintiff did not

28   ascribe any motive to the situation.   Instead she simply

1   explained that relations between the two women had deteriorated.

2   Id. 159:5-9.

3        Jurado is informative here.  See 813 F.2d 1406.  Jurado, a

4   disc jockey, alleged he was retaliated against when he was fired

5   by a radio station because he refused to comply with

6   instructions to cease broadcasting in Spanish.  Id. at 1408-09.

7   However, noting that an employee need only reasonably believe

8   that the employer has engaged in an unlawful employment

9   practice, see EEOC v. Crown Zellerbach Corp., 720 F.2d 1008,

10  1013 (9th Cir.1983), the Ninth Circuit, nonetheless, held that

11  Jurado failed to produce evidence that he engaged in any

12  activity protected by Title VII.  Id. at 1411; Cf. Crown

13  Zellerbach, 720 F.2d at 1012-13 (letter protesting unspecified

14  "racism" and "discrimination" in employer's practices is

15  protected opposition activity); Sias v. City Demonstration

16  Agency, 588 F.2d 692, 695 (9th Cir. 1978) (employee's letter to

17  HUD complaining of employment discrimination against him and

18  other Latinos is protected).  The court found that Jurado had

19  not shown that he opposed the format change as discriminatory

20  before he was fired. Id.  Instead, he merely opposed the change

21  for personal reasons.  Id.

22       As with Jurado, at the time Plaintiff was interviewed as

23  part of the respective investigations, neither Jones nor Gellman

24  had alleged a Title VII unlawful employment practice.  They had

25  merely complained of non-discriminatory workplace policies,

26  practices, and disciplinary actions.  Each was unhappy with the

27  work environment for personal reasons.  Thus, Plaintiff, in her

28  interviews, was not opposing an unlawful employment practice as

1   defined by Title VII.  See 42 U.S.C. § 2000e-3(a).  Jones'

2   solitary mention of "illegality" in one of his many emails

3   circulated around the office was far too vague for Plaintiff to

4   have reasonably believed that Defendant was engaging in unlawful

5   employment practices toward him.  See Crown Zellerbach, 720 F.2d

6   at 1013.  As a result, Plaintiff has failed to present a genuine

7   issue of material fact that might establish she engaged in a

8   protected activity when she spoke to the investigator.  Absent

9   this first element, Plaintiff cannot establish a *prima facie*

10  case of retaliation and, under the McDonnell Douglas burden

11  shifting framework, the burden does not shift to Defendant.  See

12  Cohen, 686 F.2d at 796-97.

13       Accordingly, Defendant is entitled to judgment as a matter

14  of law on Plaintiff's Title VII retaliation claim.

15       D.   FEHA Retaliation

16       Much like Title VII, FEHA prohibits retaliation against an

17  employee for opposing any practice forbidden by it, or for

18  filing a complaint, testifying, or assisting in a FEHA

19  proceeding.  See Cal. Gov't. Code § 12940(h).  In evaluating a

20  FEHA claim, California courts look to federal precedent

21  governing analogous federal discrimination laws.  See Guz v.

22  Bechtel National, Inc., 24 Cal.4th 317, 354 (2000) ("Because of

23  the similarity between state and federal employment

24  discrimination laws, California courts look to pertinent federal

25  precedent when applying our own statutes . . . .").

26       In particular, California has adopted the three-stage

27  McDonnell Douglas burden-shifting test for analyzing FEHA

28  claims.  Id.  Thus, under FEHA, a plaintiff must establish the

1  same *prima facie* case of retaliation as under Title VII and,

2  once the defendant has articulated a legitimate, non-

3  discriminatory reason for its action, raise triable issues of

4  fact as to whether the articulated reason is pretextual.  See

5  Flait v. North American Watch Corp., 3 Cal.App.4th 467, 476

6  (1992); see also Nidds v. Schindler Elevator Corp., 113 F.3d

7  912, 917-918 (9th Cir.1997).

8       Because the FEHA retaliation analysis is identical to the

9  Title VII retaliation analysis, Plaintiff's FEHA claim fails for

10 the same reasons her Title VII retaliation claim fails.

11 Plaintiff did not engage in a protected activity, thus she

12 cannot establish a *prima facie* case of retaliation and the

13 burden does not shift to Defendant.  Accordingly, Defendant is

14 entitled to judgment as a matter of law on Plaintiff's FEHA

15 retaliation claim.

16      E.   FEHA Failure to Prevent Retaliation

17      FEHA also makes it unlawful for an employer "to fail to

18 take all reasonable steps necessary to prevent discrimination

19 and harassment from occurring."  Cal. Gov't Code § 12940(k).

20 However, because Plaintiff is unable to establish FEHA

21 retaliation, she cannot fulfill the requirements for a "failure

22 to prevent" claim.  A failure to prevent claim requires a

23 finding of unlawful discrimination or retaliation as a

24 prerequisite to liability.  See 2 Cal. Code Regs. § 11023; see

25 also Trujillo v. North Cnty Transit Dist., 63 Cal.App.4th 280,

26 289 (1998).  Accordingly, Defendant is entitled to judgment as a

27 matter of law on Plaintiff's FEHA failure to prevent retaliation

28 claim.

12

1        F.    California Labor Code Section 1102.5

2            1.    Legal Standard

3        California Labor Code § 1102.5 prohibits employers from

4    retaliating against employees for engaging in a protected

5    activity, such as disclosing information concerning illegal

6    activity or refusing to participate in illegal activity.  See

7    Cal. Lab. Code § 1102.5(b)-(c).  Here, too, the McDonnell

8    Douglas burden-shifting framework applies.  Bowen v. M. Caratan,

9    Inc., 142 F.Supp.3d 1007, 1031 (E.D. Cal. 2015) (citation

10   omitted).  And the three elements of a *prima facie* retaliation

11   claim are the same.  Id. at 1030-31 (citing Mokler v. Cnty of

12   Orange, 157 Cal.App.4th 121, 138 (2007)).  To warrant summary

13   judgment on a § 1102.5 claim, a defendant must satisfy his

14   initial burden of showing (1) the plaintiff cannot establish one

15   or more of the elements of her *prima facie* case or (2) there was

16   a legitimate, non-retaliatory reason for terminating her

17   employment.  Id. at 1031 (internal quotation marks and citations

18   omitted).

19            2.    Analysis

20       Plaintiff advances her § 1102.5 claim under two different

21   theories.  First, in her complaint, she alleges Defendant

22   violated § 1102.5(a) and (b) by terminating her employment after

23   she disclosed to her supervisors that El Dorado County jail

24   staff was sexually assaulting female inmates.  Compl. ¶¶ 58-61.

25   Then, in her opposition, she alleges Defendant also violated

26   § 1102.5(a) and (b) by terminating her employment after she was

27   interviewed as a part of the Jones and Gellman investigations.

28   Opp'n at 30.  As an initial matter, the second theory fails for

13

1   the reasons set forth above.  Plaintiff cannot establish a *prima*

2   *facie* case of retaliation for supporting Jones and Gellman when

3   she was interviewed by the investigator.  On neither occasion

4   did she engage in a protected activity.

5       As for the first theory, it is undisputed that Plaintiff

6   was reporting illegal conduct when she informed her supervisors

7   that one of her clients had witnessed jail staff sexually

8   assaulting other inmates.  Mot. at 7.  Thus, Plaintiff's

9   disclosure was a protected activity.  See Cal. Lab. Code

10  § 1102.5(b).  It is similarly undisputed that Plaintiff's

11  termination is considered an adverse employment action.  Mot. at

12  13-14.  However, Plaintiff cannot establish a causal link

13  between the two.  Monterosso made the decision to release

14  Plaintiff from probation on June 1, 2017.  SUF, Issue No. 1,

15  ¶ 40.  Plaintiff does not dispute this.  Id.  She merely

16  disputes the reason cited for the termination.  Id.  It is also

17  undisputed that, by June 16, 2017, Monterosso had decided she

18  would terminate Plaintiff on either June 21, 2017, or June 22,

19  2017.  SUF, Issue No. 3, ¶ 44.  Plaintiff did not report the

20  situation at the jail until June 21, 2017, which,

21  coincidentally, was the day Monterosso had previously decided on

22  for Plaintiff's release from probation.  Id.  ¶ 45.  Moreover,

23  Plaintiff does not disagree that Monterosso took the sexual

24  assault allegations seriously and contacted the El Dorado County

25  Sheriff's Department to report Plaintiff's client's complaint

26  that same day.  Id. ¶¶ 46, 47.

27      As a result, Plaintiff has failed to present a genuine

28  issue of material fact that might establish a causal connection

14

1  between the protected activity and her termination.  Absent this

2  third element, Plaintiff cannot establish a *prima facie* case of

3  retaliation and, yet again, the burden does not shift to

4  Defendant.  See <u>Cohen</u>, 686 F.2d at 796–97.

5      Accordingly, Defendant is entitled to judgment as a matter

6  of law on Plaintiff's § 1102.5 claim.

7

8                        III. ORDER

9      For the reasons set forth above, the Court GRANTS

10  Defendant's Motion for Summary Judgment in its entirety.  The

11  Clerk of the Court is ordered to close the case.

12      IT IS SO ORDERED.

13  Dated: November 10, 2020

14  _____

15  JOHN A. MENDEZ,
   UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28